# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**CHARLES RAY CRAWFORD**                                           **PLAINTIFF**

**v.**                                        **No. 4:12CV38-M-A**

**CHRISTOPHER EPPS, ET AL.**                                     **DEFENDANTS**

## REPORT AND RECOMMENDATION

The plaintiff, an inmate in the custody of the Mississippi Department of Corrections, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. A plaintiff's claim must be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1]

### Allegations

Crawford, a death row inmate, makes two basic claims: (1) poor general conditions of confinement, and (2) retaliation for complaining about them. The gravamen of his lengthy complaint is that after defending and settling several suits regarding the deplorable conditions at Unit 32 at Parchman, the Mississippi Department of Corrections simply moved the death row inmates to Unit 29-J, which has similar conditions.

Crawford alleges that the following conditions have violated his constitutional rights:

(1)      The heating and cooling system at Unit 29-J is defective – and was completely broken from December 29, 2011, to January 1, 2012. In the winter, if the temperature on the upper level is adequate, then it is unbearably cold in the lower level – and vice versa. The only "fix" MDOC has attempted is to repeatedly send in maintenance crews to adjust the

---

[1] 28 U.S.C. § 1915(g).

temperature – rather than address the cause of the temperature differential between the upper and lower levels.

(2) Hot water is only intermittently available at times other than shower call.

(3) Rainwater leaks into many of the cells in Unit 29-J (including Crawford's).

(4) Food is served on unsanitary trays after sitting out long enough to spoil – and has at times caused Crawford nausea, vomiting, and diarrhea. Though this problem was fixed for a time, it has returned.

(5) Lighting in the cells is inadequate to read – registering only 17 to 18 lumens when measured right against the bulb – even after MDOC installed two fluorescent bulbs in each cell, rather than one. The dual-bulb fixtures produce only 17 to 18 lumens, when 20 is the minimum required for reading.

(6) For about two months, Crawford was housed near death row inmates James Billiot and Ronnie Conner, both of whom suffer from severe psychosis. Both are loud, hard to control, and dangerous. He received a Rule Violation Report for refusing to move back near Billiot and Conner. He was moved away from them just after the instant suit was filed, but he is now near another mental patient.

(7) The window screens do not stop biting and stinging insects from entering Crawford's cell and tormenting him, especially at night. He loses sleep and remains exhausted because of that. If he closes the window entirely, then his cell temperature in the summer can exceed 100°F, preventing him from sleeping. MDOC attempted to fix this problem, but the screens they ordered were too small for the window frames. MDOC has not fixed the problem.

(8) The laundry service is unreliable and does not adequately clean Crawford's bed linens and clothes. In addition, sometimes his clothes get lost. For this reason, Crawford has been laundering his clothes and bedding in his cell – in accordance with MDOC policy for death row inmates. Unit 29-J inmates can no longer do their own laundry – and must now accept the unreliable and unsatisfactory laundering of the Mississippi State Penitentiary.

(9) The grievance ("ARP") system is rigged such that death row inmates have no real chance of having a grievance decided in their favor. Though there are hearings and investigations, they are a sham carried out only to meet the legal requirements established by this court. Inmates are always found guilty with no regard to the evidence presented. Also, the punishments are completely out of proportion to the offenses (denial of family visitation and phone privileges for up to a year, etc.) for the most minor, non-violent of rule

violations. Crawford, himself, has only been found guilty of five rule infractions: (1) suicide attempt, (2) making loud noises, or "beating on the tin," (3) threatening a guard, (4) refused to take his meal tray because the food was spoiled, and (5) using a small towel to shield himself from the view of female guards while using the toilet. He denies threatening the guard and claims that use of the towel briefly for privacy as he did comports with MDOC policy and that he has done so for nearly two decades.

(10) On May 31, 2011, Lt. Earnest King issued a rule violation report against Crawford for threatening him, an allegation Crawford vehemently denies. Crawford did, however, let other death row inmates know that King (who routinely works on death row) was part of the "Execution Team" that actually carries out executions for MDOC. Crawford alleges that two other officers (including the hearing officer) told him that they knew King was lying, but that they "had to ignore that" and find Crawford guilty. Crawford believes that King retaliated against him for exposing him as an "Execution Team" member.

(11) On March 7, 2012, Warden Earnest Lee, Lt. Nathan Harris, and others were responsible for Crawford's being maced during his transfer to another cell in the unit. Crawford believes this was done in retaliation for his filing 18 request forms complaining about living conditions in Unit 29-J.

(12) Crawford is being punished for putting a small hand towel up while he uses the toilet to shield himself from the view of the female officers. He has done so for 18 years with no problems, but now is being punished for it. He believes this is also in retaliation for having filed numerous grievances and suits about living conditions in Unit 29-J.

(13) Death row inmates get no "incentive programs" which offer benefits and privileges for good behavior.

(14) MDOC charges outrageous prices for canteen items and telephone calls – many times what the same products and services would cost in the free world.

(15) Understaffing in the unit and hot-tempered guards cause unsafe conditions in Unit 29-J.

(16) MDOC does not conduct proper fire drills in Unit 29-J, only "mock" fire drills.

(17) The American Correctional Association ("ACA") improperly accredited Unit 29-J, when there are many problems that should have prevented accreditation.

(18) The ACLU failed to ensure that the problems at Unit 32 were not repeated in other units.

**Defendants Who Are Not State Actors**

Crawford makes various claims against Dr. Kim Nagel (a psychiatrist who works for Wexford Health Sources, Inc.), Wexford Health Sources, Inc. (the company which provides medical services for MDOC), the American Correctional Association (a prison accrediting agency), Margaret Winter (an attorney for the ACLU National Prison Project), and the ACLU National Prison Project, itself. None of these defendants are state actors.

Section 1983 states in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof for the deprivation of any rights, privileges, immunities secured by the Constitution and laws shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 does not exist to provide a remedy for the wrongful conduct of private parties, no matter how onerous the conduct. *Cornish v. Correctional Services Corp.*, 402 F.3d 545 (5th Cir. 2005). For a plaintiff to state a viable § 1983 constitutional deprivation claim against a private party, the private party's alleged conduct must constitute state action under color of state law. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982).

**Various Tests to Determine What Constitutes State Action**

A court analyzing whether a private party has acted under color of state law must inquire whether there exists such nexus between the state and the action by the private party that otherwise private behavior has in fact become behavior of the state itself. *Brentwood Academy v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288 (1999); *Morris v. Dillards Dept. Stores, Inc.*, 277 F.3d 743, 747-748 (5th Cir. 2001). A plaintiff must allege an agreement exists between a private party and a

governmental entity, resulting in a deprivation of constitutional rights. *Priester v. Lowndes Co.*, 354 F.3d 414, 420 (5th Cir. 2004).

> "The '[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.' Moreover, '[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'"

*Cornish v. Correctional Serv. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (internal citations omitted).

No single test exists to determine if private conduct is, in reality, state conduct. Rather, different formulas apply to make this determination. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999); *Luger*, 457 U.S. 922 (1982). To meet the state action requirement, the plaintiff must show a sufficiently close relationship between the private actor and the state, establishing the private actor acts as an agent of the state. *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544, 552 (5th Cir. 1988).

### Public Function Test

Under the public function test, the court can treat a private actor as a state actor when the private actor performs a function traditionally existing as the exclusive province of the state. *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989); *Bass*, 180 F.3d at 241-242. As to Dr. Nagel and Wexford, providing medical care is not traditionally the exclusive province of the state. In addition, both Ms. Winter and the ACLU Prison Project routinely sue states for alleged constitutional violations regarding the conditions of confinement in state institutions. Clearly, this does not qualify as an exclusive province of the State. Neither is accreditation of prisons a function which is within the exclusive province of a state. As such, none of these defendants can be state actors under the public function test.

## State Compulsion Test

Under the state compulsion test, a state can have responsibility for the conduct of a private actor if the state has exercised coercive power or has furnished significant overt or covert encouragement converting the act of the private actor into the act of the state. *Blum v. Yaretsky*, 457 U.S. 1991 (1982). The court cannot find these defendants to be state actors under this test, either. The State of Mississippi has contracted with Wexford to provide medical services to prisoners, and Wexford is charged with carrying out those services. As set forth above, such an arrangement does not, alone, rise to the level of coercion. Likewise, Crawford does not allege that the State exercises coercive control of Dr. Kim, Margaret Winter, or the ACLU National Prison Project. Though he believes that the ACA should have decided not to give accreditation to the Mississippi State Penitentiary due to the conditions in Unit 29-J, he has not alleged that the State of Mississippi exercised control over the ACA and forced its agents to give such accreditation. Crawford's allegations do not meet the state compulsion test.

## Nexus/Joint Action Test

Finally, under the nexus/joint action test, a private actor can have § 1983 liability when that actor willfully participates in joint action with the state, and that joint action causes a constitutional deprivation. *Dennis v. Sparks*, 449 U.S. 24 (1980); *Luger*, 457 U.S. at 941; *Bass*, 180 F.3d at 242; *Morris*, 277 F.3d at 748. Crawford alleges that Dr. Nagel and Wexford should have pressed MDOC to keep inmates like him separate from the psychotic inmates; however, these defendants are charged only with providing medical and psychiatric care to inmates. MDOC officials make the decision regarding the housing of inmates, *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990), not the medical staff, who may, at their discretion, merely suggest a different housing assignment for a particular inmate.

Crawford's claim regarding Ms. Winter and the National Prison Project could not possibly meet this test, as they represented the State's adversaries in the case challenging Unit 32 death row conditions. Crawford's claim that the ACA and the State mutually benefitted from a sham accreditation is a novel theory, though it is unavailing. Crawford believes that the State benefitted from the ACA's accreditation by being able to use the accreditation as evidence to defend suits such as the present one. The ACA's benefit would, of course, be remuneration for its inspections and accrediting services. However, Crawford conceded at the *Spears* hearing that he had only his personal belief that such an arrangement existed – and that he had not even seen a copy of the ACA report regarding accreditation. Crawford has not, therefore, pled facts sufficient to support his bare allegation, and his claim against the ACA also fails the nexus/joint action test.

In sum, defendants Dr. Kim Nagel, Wexford Health Sources, Inc. (the company which provides medical services for MDOC), the American Correctional Association, Margaret Winter, and the ACLU National Prison Project are not state actors and thus cannot be sued under 42 U.S.C. § 1983. All of the plaintiff's claims against these defendants should be dismissed for failure to state a claim upon which relief could be granted.

**Allegations Failing to State a Claim**

Several of Crawford's allegations fail to state a claim upon which § 1983 relief could be granted: (1) intermittently available hot water, (2) unsatisfactory laundry service, (3) lack of incentive programs for death row inmates, (4) unreasonably high prices at the prison canteen, (5) improperly conducted fire drills in the building housing death row inmates, (6) that the ACA improperly gave Unit 29-J accreditation, and (7) that the ACLU gave inadequate representation by failing to ensure that the

conditions in Unit 29 were up to constitutional standards before death row inmates were moved there. Claims one through five fall under the category of general conditions of confinement. [T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989) (citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). It is clear that prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995), quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Based upon a review of the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the following claims do not rise to the level of a constitutional violation because, as to these claims, Crawford has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

### Lack of Hot Water

Crawford concedes that hot water is readily available for shower call, but not during other times when he would like to use hot water in his cell. He also admits that he can get at least warm water, but it takes a full 15 minutes or more for the warm water to reach his cell.

### Unsatisfactory Clothes Laundering

Similarly, Crawford alleges that his laundry is inadequately cleaned by the MDOC laundry service, so he washes his own laundry in his cell. First, he has not alleged that the laundry returned

- 8 -

from MDOC is unsanitary; instead, he would like for it to be cleaned more thoroughly. Though he alleges that on one occasion his laundry was returned smelling of urine, that incident occurred some 15 years ago and is not relevant to his instant complaint. Neither of these allegations state a claim upon which relief could be granted because, taken as a whole, they do not show that Crawford was denied a basic human necessity for an unreasonable period of time, and any such deprivation was not a threat to his health, but only his comfort.

### Lack of Incentive Programs and High Canteen Prices

Crawford also complains about the lack of incentive programs for death row inmates and what he considers to be outrageous prices for products purchased at the prison canteen. First, there is simply no constitutional right for inmates to have access to incentive programs. In addition, Crawford has not alleged that the products purchased from the canteen are a basic human need. As such, his diminished access to those products due to high prices does not rise to the level of a constitutional violation.

### Simulated Fire Drills

Crawford's claim regarding the inadequacy of the fire drills conducted for death row inmates must also fail. Crawford alleges that the fire drills conducted on death row consist only of a prison guard yelling "Simulated fire drill," then having guards walk down the tier past the inmates. The court will give wide latitude to prison officials regarding the propriety of their administrative decisions. A prison policy or practice will not be found unconstitutional as long as it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). Though a different, more thorough, method of conducting a fire drill in Crawford's unit would be a more accurate measure of the ability of prison officials to evacuate the unit, the State's interest in the

safety and security of both prisoners and prison staff is readily apparent. Transporting death row inmates is fraught with risk for both guards and prisoners. Therefore, the court will not second-guess the decision by prison administrators to use the procedure they have chosen to carry out fire drills. As such, Crawford's allegation regarding the propriety of the fire drills conducted on death row does not state a claim under 42 U.S.C. § 1983.

**Erroneous Accreditation and the Adequacy of
Representation from the ACLU and Its Attorney**

Lastly, Crawford alleges that the American Corrections Association erroneously gave accreditation to Unit 29-L and that both Margaret Winter and the ACLU Prison Project failed to ensure conditions in Unit 29-J were sufficient under the Constitution. As set forth above in the discussion regarding Crawford's allegations against these defendants, the allegations failure to state a claim upon which relief could be granted.

For these reasons, Crawford's claims regarding intermittent access to hot water, unsatisfactory laundry service, lack of access to incentive programs, high canteen prices, inadequately conducted fire drills, and inadequate representation regarding his move from Unit 32 to Unit 29 should be dismissed for failure to state a claim upon which relief could be granted.

**Conclusion**

The undersigned recommends that the claims against defendants Nagel, Wexford Health Sources, Inc., the American Corrections Association, Margaret Winter, and the ACLU National Prison Project be dismissed with prejudice for failure to state a claim upon which relief could be granted. In addition, the following claims for damages should be dismissed with prejudice: intermittently

available hot water, unsatisfactory laundry service, lack of incentive programs for death row inmates, unreasonably high prices at the prison canteen, improperly conducted fire drills in the building housing death row inmates, that the ACA improperly awarded Unit 29-J accreditation, and that the ACLU gave inadequate representation by failing to ensure that the conditions in Unit 29 were up to constitutional standards.

Crawford's remaining claims against Christopher Epps, E. L. Sparkman, Warden Earnest Lee, Former Warden James Brewer, Lee Simon, Corrections Supervisor Nathan Harris, Hearing Officer Eddie Gates, Hearing Officer James Griffin, Hearing Officer Sarah Pittman, and Lt. Earnest King , however, will be allowed to proceed.

**Handling of Objections, Acknowledgment of Receipt**

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of

this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted, this, the 28th day of February, 2014.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE